## P. M. SCHUMPERT ET AL. *v.* DILLARD, PINSON & CO.

1. CONVEYANCE. *When void for uncertainty in names.*
   A mortgage of land to "Pinson, Dillard & Co." is not void for uncertainty, in not giving the surnames of some of the members of the firm, and in omitting the christian names of all of them. And even if the title only vested, by the conveyance, in those whose surnames were mentioned, the mortgage would inure to the benefit of all of the members of the firm, and they might all join in the suit to enforce it.

2. MORTGAGE. *Valuable consideration. Pre-existing debt.*
   A mortgage given for a pre-existing debt is not invalid for want of valuable consideration, as against a prior unrecorded mortgage, where the time of payment of the debt is extended by a note taken four days before the execution of the mortgage, if it appears that the giving of the note and the execution of the mortgage formed one transaction.

3. CHANCERY. *Practice. Notes exhibited in foreclosure suit.*
   In a suit to foreclose a mortgage, if the debtor has given a promissory note, or other personal obligation, for the debt secured by the mortgage, it must be produced at the hearing of the cause, or its loss or destruction proven. And where there has been a renewal note given, unless it appears that the first note has been surrendered, the creditor must exhibit both notes on the hearing.

4. SAME. *Foreclosure suit   Statute of limitations pendente lite.*
   A suit brought to foreclose a mortgage, within the statutory limitation, cannot be affected by the fact that the note given for the mortgage debt becomes barred after the filing of the bill, but before the hearing of the cause.

5. SAME. *Mortgage. When discharged by subsequent security.*
   A defendant resisting the foreclosure of a mortgage, on the ground that it has been paid and discharged by a deed in trust subsequently given, must, by proof, overcome the presumption of law that the deed in trust was taken only as further security for the debt, and not in payment and discharge of the mortgage.

APPEAL from the Chancery Court of Clay County.

Hon. L. BRAME, Chancellor.

The case is stated in the opinion of the court.

*Flaniken & Becket*, for the appellants.

1. A fatal defect in the mortgage is that it is made to the " firm of Pinson, Dillard & Co." " A grant to L. B. & Co. vests the title in L. B. alone. *Winter* v. *Stock*, 29 Cal. 411; *Gossett* v. *Kent*, 19 Ark. 607; *Arthur* v. *Weston*, 22 Mo. 370; *Jackson* v. *Sisson*, 2 Johns. Ch. 321; *Beaman* v. *Whitney*, 20 Me.; *Fanshaw's Case*, F. Moore, 229; 1 Wood. on Conv. 162; *Jackson* v. *Corey*, 8 Johns. 388; *Hornbeck* v. *Westbrook*, 9 Johns. 74; *Moreau* v. *Sufferans*, 3 Sneed, 595; *Jarvis* v. *Babcock*, 5 Barb. 139; *Hornbeck* v. *Sleight*, 12 Johns. 199; *McGuire* v. *Ramsey*, 4 Eng. (Ark.) 518; 3 Washb. on Real Prop., 3d ed., 237, 238; 1 *ib.* 574, and note 1; *Wanderlin* v. *Cadozan*, 50 Cal. 613; *McCauley* v. *Fulton*, 44 Cal. 355. " A grant to ' A or B ' is void for uncertainty." 3 Washb. on Real Prop., 3d ed., 239, 529, sec. 29, and note 4. A grant to a person by surname only, without something to show who was intended, is void for uncertainty. 3 *ib.* 238, and note 9.

This mortgage to the " firm of Pinson, Dillard & Co." must certainly be void for uncertainty. If it had been made to R. A. Pinson & Co., it would have been a conveyance to R. A. Pinson alone, who would have held as trustee for the firm. If it had been a deed of trust to a trustee for the use of Pinson, Dillard & Co., no reason is perceived why the trustee should not take the legal title. But in this case the instrument calls itself a deed of trust, and yet no trustee is named. It is made directly to the " firm of Pinson, Dillard & Co." The evidence shows that there were two Dillards in the firm, and complainants, to make the matter still more complicated, claim that an indebtedness of " Schumpert & Petty " to " Dillard, Pinson & Co." was embraced and intended to be secured. In this firm of Dillard, Pinson & Co. was a fourth partner, R. L. Coffin. Under the decisions above quoted the legal title was not conveyed to R. A. Pinson, J. W. Dillard, T. B. Dillard, or

R. L. Coffin.   R. L. Coffin was not named, and was not a member of the firm of Pinson, Dillard & Co.   There were two Dillards, and it is evident that the legal title did not pass to either, for it is impossible to tell which was the "Dillard" and which was the "Co.;" and, as we have shown above, a grant to "A or B," or "to a person by surname only," is void for uncertainty.

The same reason and authorities apply to "Pinson," where "Dillard & Co." are left out; there only remains the surname "Pinson," without anything in the instrument to show what "Pinson" was intended.   And to show that neither R. A. nor any other christian name was intended, the instrument calls itself a "trust deed," and says that it is entered into between P. M. Schumpert, of the first part, and the "firm" of Pinson, Dillard & Co., of the second part.   The conveyance is to a "firm," a partnership, which has no corporate existence, and is incapable of suing or being sued as a firm, without some designation of who compose the firm.   1 Chitty's Pl. 11, 12, margin, and notes.   In fact, the members comprising a "firm" might be changed *ad libitum*, as is frequently done, and still retain the firm-name, and if the members can claim anything at all, it cannot be more than an equitable title.   No legal title is conveyed to any of them.   *Hornbeck* v. *Sleight*, 12 Johns. 199.

Besides, it is made to "the firm of Pinson, Dillard & Co.," and their heirs, etc.   A "firm" cannot have heirs, executors, or administrators, and if it could be held that Pinson was sufficiently designated for him to take the legal title, yet when he died there was no person designated who was to take, and the legal title was either *in nubibus* or reverted back to P. M. Schumpert, and from him to Wier — in either of which cases Wier's superior equity would be let in.

2. We think that it is shown and admitted that the original mortgage was taken to secure a pre-existing debt, and that complainants have utterly failed to show any new or binding consideration.   In such cases it is established more firmly than

any other principle of law that the mortgagees are not *bona-fide* purchasers for a valuable consideration. *Perkins* v. *Swank*, 43 Miss. 359; *Hinds* v. *Pugh*, 48 Miss. 268; *Wells* v. *Morrow*, 38 Ala. (N. S.) 125; *Boyd* v. *Bell*, 29 Ala. 713; *Cary* v. *White*, 52 N. Y. 141; *Dickerson* v. *Tillinghast*, 4 Paige, 215; *Coddlington* v. *Bay*, 20 Johns. 637; *Hamlin* v. *Wright*, 26 Wis.; *Jenkins* v. *Schwab*, 14 Wis. 1; *Cook* v. *Helm*, 5 Wis. 107; *Petrie* v. *Clark*, 11 Serg. & R. 377; *Stalker* v. *McDonald*, 6 Hill, 93; *Watkins* v. *Edwards*, 23 Texas, 447; *Blanchard* v. *Tyler*, 12 Mich. 339; *Johnson* v. *Graves*, 27 Ark. 557; *Cunningham* v. *Schley*, 41 Geo. 426; *Glinski* v. *Zanadski*, 8 Fla. 405; *Baze* v. *Arper*, 6 Minn. 220; *Boone* v. *Chiles*, 10 Pet. 211; Perry on Tr., secs. 219–221; 3 Washb. on Real Prop., 3d ed., 289, 290; 2 Hill. on Mort., 4th ed., 494, 499, 500; *ib.* 469, and note *a;* 1 Story's Eq. Jur., secs. 410, 416, 436; 2 *ib.*, secs. 1232, 1502, 1503; Story's Eq. Pl., secs. 604 *a*, 805, 807 *a; ib.*, secs. 806, 811; 2 Am. Ld. Cas., 5th ed., 233; 2 Ld. Cas. in Eq. 103–109.

3. The trust deed to Pinson, Dillard & Co. was given in satisfaction of the mortgage. "Where a debt is secured by note and mortgage, the taking of a new note and new mortgage, as collateral or additional security, operates as an extinguishment of the note and mortgage first given, if superior equities have intervened," as is the case here. *Cissna* v. *Haines*, 18 Ind. 496.

"When the payee of a mortgage note gave it up, and took a new note for a different amount, and without any agreement to show that it was still to be secured by the mortgage, he loses his right to the security, as against other creditors also secured by the same mortgage." *Wilhelm* v. *Leonard*, 13 Iowa, 330.

Suppose the new note was for a larger amount; it could not be secured by the mortgage even by agreement. If it is for a smaller amount that is partly paid, it must be shown that it was agreed for the new note to be secured by the mortgage. *Dunshee* v. *Parmelee*, 19 Vt. 172.

"When a mortgagee takes from the mortgagor another mortgage on the same and other property, extending the law-day and securing other creditors, the taking of the new note and new mortgage is a waiver of the right to enforce the first." *Billingsly* v. *Harrell*, 11 Ala. 775. "For no creditor can claim under a mortgage, whose debt was not originally intended to be secured by it." *Vose* v. *Bowman*, 6 Wall. 452.

All the objections apply in the present case : first, superior equities have intervened ; second, the new note and trust deed is for a different amount ; third, it is not even contended that there was any agreement that the old mortgage was to continue in force ; fourth, a new creditor, R. L. Coffin, comes in, with an indebtedness, not from Schumpert, but from "Schumpert & Petty ;" fifth, the law-day is extended ; sixth, the trust deed is not on all the same property ; seventh, there was an actual contract that the mortgage was to be given up or destroyed.

All the authorities we have been able to investigate hold that the Chancery Court will keep alive a prior mortgage after a renewal mortgage has been given, so as to cut out intermediate incumbrances ; but no one has held that the mortgage will be kept alive so as to cut out a prior equity to itself. It was always allowable for a party with a prior equity to buy in a prior legal title, so as to protect his equity, and this though it was a mere naked legal title. Equity favors the prior equity, and no reason can be shown why it should keep alive a junior legal title to defeat a prior equity. It keeps alive the prior legal title, in cases of intermediate incumbrances, to protect the prior equity, and the doctrine contended for by complainants would subvert the very foundation of the equity doctrine on this subject ; and we think the doctrine in *Cissna* v. *Haines*, 18 Ind. 496, is the true one. 1 Story's Eq. Jur., sec. 64 *c*, and notes.

4. No decree of foreclosure can be rendered on a mortgage and note without their production, or an accounting by affidavit for their absence. *Young* v. *McKee*, 13 Mich. 552 ;

*Lucas* v. *Harris*, 20 Ill. 165 ; *Bennett* v. *Taylor*, 5 Cal. 502 ; *Sowarby* v. *Russell*, 6 Robt. (N. Y.) 322 ; *Burgwin* v. *Richardson*, 3 Hawks, 203 ; *Carr* v. *Fielden*, 18 Ill. 77 ; *Den* v. *Wade*, 1 Spen. 291 ; *Harlan* v. *Smith*, 6 Cal. 173 ; *Dunshee* v. *Parmelee*, 19 Vt. 172 ; *Beers* v. *Hawley*, 3 Conn. 110 ; *White* v. *Harrison*, 11 Ill. 361 ; *Wilkins* v. *Wilkins*, 4 Port. 245–249 ; *May* v. *Taylor*, 22 Texas, 348 ; *Vickery* v. *Rester*, 4 How. (Miss.) 293 ; *Brown* v. *Sadler*, 13 La. 205 ; *Pipes* v. *Norton*, 47 Miss. 61 ; Story on Prom. Notes, sec. 106 ; 2 Hill on Mort., 4th ed., 200, secs. 57–59 ; *ib.* 201, secs. 61, 62.

" It does not make any difference that the answer admits the execution of the mortgage and note. They must be filed in the cause and produced on the trial." *Young* v. *McKee*, 13 Mich. 552. " Where the existence of the mortgage and note is disputed, they must be produced, or their absence satisfactorily accounted for, and there must be a finding on this issue." *May* v. *Taylor*, 22 Texas, 348 ; 2 Hill. on Mort., 4th ed., 200, sec. 58. Here the validity and existence of the original mortgage and note is disputed by both answers and the evidence of Schumpert and T. C. White.

5. A judgment in a court of concurrent jurisdiction makes the matter *res adjudicata* in both. *Houston* v. *Royston*, 1 Smed. & M. 238 ; *McCraven* v. *Forbes*, 6 How. (Miss.) 569 ; *Green* v. *Robinson*, 5 How. (Miss.) 80 ; *Glidewell* v. *Hite*, 5 How. (Miss.) 110. Complainants cannot claim that they failed in the Circuit Court because they could not attack the *bona fides* of Wier's deed. Fraud is cognizable both at law and in equity, and if a party fails to set it up at law, he cannot do so in equity. *Brewer* v. *Harris*, 2 Smed. & M. 84 ; *Allen* v. *Hopson*, Freem. Ch. 276. Ejectment can be sustained on a mortgage. *Trustees Jefferson College* v. *Dickson*, Freem. Ch. 474 ; 2 Hill. on Mort., 4th ed., 115, sec. 2 ; *ib.* 123, secs. 11, 12 ; *ib.* 127, sec. 17. Besides, they have by written agreement abandoned the ground that the deed to Wier was " a sham ; " and if the court had jurisdiction on

this ground, they have voluntarily ousted the jurisdiction. It was true they could still file a bill against Schumpert to foreclose, but they could not make Wier a party, for the question of legal title, as to him, was *res adjudicata,* and he was a prior incumbrancer. Story's Eq. Pl., secs. 148, 193, 230.

Now, if they could make him a party at all, it must be expressly as a prior incumbrancer. The Circuit Court case was commenced in 1872, and ended on August 3, 1874, and the chancery suit was not commenced till September, 1874, after Wier's rights had been fixed by the Circuit Court. Story's Eq. Pl., sec. 193.

6. Refusing to permit the defendants to file amended or supplemental answers, showing that both the mortgage and trust notes had become barred by the statute of limitations *pendente lite,* was error.

We think the laws justify us in saying that, when the note becomes barred by the statute of limitations, the lien of the mortgage expires with it, and that the note may become barred *pendente lite* a suit on the mortgage. Adams' Eq., 3d Am. ed., 307 and note 1, marginal p. 110; *Huntington* v. *Babbitt,* 46 Miss. 533; *Maddox* v. *Jones,* 51 Miss. 531; *Blodgett* v. *Waltham,* Hill & D. Supp. 65; *Sherman* v. *Sherman,* 3 Ind. 337; 1 Hill. on Mort., 4th ed., 474, and note *a*; 2 *ib.* 27, sec. 28, and note 2; *Heirs of Ross* v. *Mitchell,* 28 Texas, 150; *Perkins* v. *Sterne,* 23 Texas, 561; *Tucker* v. *Shade,* 25 Ohio St. 355; *Yates* v. *Weeden,* 6 Bush, 438.

The chancery suit cannot keep alive the note. "When any mortgage or deed in trust shall be given, or shall have been given, to secure the payment of any sum of money specified in any writing, no action, suit, or other proceeding shall be brought or had upon such mortgage or deed in trust but within the time that may be allowed for the commencement of an action at law, upon the writing in which the sum of money secured by such mortgage or deed of trust may be specified; and in all cases where the remedy at law to recover the debt shall be barred, the remedy in equity on the mortgage shall

be barred.'' Code 1871, sec. 2150; *Partee* v. *Mathews*, 53 Miss. 140; *Eggleston* v. *Watson*, 53 Miss. 339.

If the Legislature had intended that the chancery suit should keep alive the mortgage, the first clause of this statute was all that was necessary; but the latter clause is totally repugnant to any such construction, and unequivocally evinces a contrary intention. And this intention is still more manifest under the Code of 1857, under which this mortgage and trust deed were made, for there the two clauses of the statute are wholly disconnected. Code 1857, p. 399, art. 4.

The only question is, '' Is the remedy at law to recover the debt barred?'' If a creditor obtain judgment, and then file a bill to set aside a fraudulent conveyance to make his judgment effective, it does not keep alive the judgment lien, but the same, unless sued on or revived, will become barred *pendente lite*. *McCutchen* v. *Miller*, 2 Geo. 65. If a chancery suit cannot keep alive a judgment on a note, it is difficult to see how it can keep alive a note before judgment. The mortgage is a mere security for the note, and the note has never been sued on, or ever filed, or produced in the chancery suit. The Chancery Court has never had the note under its jurisdiction or control.

*Thomas E. Bugg*, for the appellees.

1. It is claimed that the mortgage is fatally defective, in being made to '' Pinson, Dillard & Co.'' The authorities cited on this point do not sustain the idea of such a defect as will vitiate the mortgage or destroy the lien. It is said by counsel for the appellants that '' a grant to a person by surname only, without something to show who was intended, is void for uncertainty.'' 3 Washb. on Real Prop. 238, note 9. I insist that the conveyance to '' Pinson, Dillard & Co.'' is sufficient to show what persons were meant in the deed, and that it cannot be void for uncertainty, in accordance with the principle above cited.

2. The appellants object that the original mortgage to Pinson, Dillard & Co. was given to secure a pre-existing debt.

This involves the question as to whether Pinson, Dillard & Co. were purchasers for a valuable consideration. Extension of time in the payment of the debt is a valuable consideration. 2 Hill. on Mort. 448, sec. 40; *Byron* v. *Cummings*, 41 Miss. 192; *Cary* v. *White* et al., 52 N. Y. 138. Dillard in his deposition says there was an extension of time, and Schumpert says the same thing.

3. It is contended in the answer of the appellants that there was such a novation in the reception of the new note and deed of trust as extinguished the old note and mortgage, because of the insertion of Coffin's name in the new security. But Coffin had an interest in the original debt as secured, and the leaving of his name out of the papers does not preclude him from asserting his rights under them. Novation is the substitution of a new obligation for an old one, which is thereby extinguished. To effect such a transformation, several things are requisite, one of which is, there must be an express intention to innovate; there must be the *animus novandi* — a novation is never presumed. In this instance, as an evidence that there was no intention of a novation, complainants held both the old and new securities. No mere agreement for the transformation of one contract into another is of effect until carried into execution; a good novation is an accord executed. 2 Bouv. L. Dic. 243, sec. 9; 1 Pars. on Con. 217; *Ranster* v. *Ford*, 46 Miss. 289; *Lewis* v. *Storke*, 10 Smed. & M. 120; 2 Pars. on Con. 681. To constitute accord and satisfaction, the agreement must not be merely executory, but executed and accepted. *Barnes* v. *Loyd*, 1 How. 584; *Gisson* v. *Doherty*, 43 Miss. 538; 2 Pars. on Con. 687.

A mortgage can only be canceled by payment or an express release. 1 Hill. on Mort. 476, sec. 3; *Summers & Brannin* v. *Roos & Co.*, 42 Miss. 749. A new note executed by a mortgagor, and delivered in lieu of one previously given, does not affect the security. *Whittaker* v. *Dick & Co.*, 5 How. 296. A party having a specific lien upon property cannot be divested of it, except by some distinct act of his own amount-

ing to a waiver or absolute abandonment of it.    *Heard* v.
*Evans*, Freem. Ch. 79 ; *Park* v. *Kelley* et al., 10 Smed. & M.
184.    When parties intend the substitution of a new debt or
obligation for an old one, their intention to that effect should
be positively declared, or, in whatever way expressed, be made
so evident as not to admit of a doubt.    *Cockrell* v. *Johnson*,
28 Ark. 193 ; *Smith* v. *Foster*, 5 Oreg. 44.

4. It is assigned for error " that the decree was rendered
without the production of the mortgage and trust deed and
notes."    The record shows that there was never any demand
made for the production of the original mortgage, deed of
trust, or notes, until an account was ordered to be stated by
the commissioner, when the chancellor decided that they were
not required to be produced ; hence there has been no *failure*
to account satisfactorily for the absence of these papers.    Many
precedents are cited by opposing counsel on this point, many
of which are under statutes of particular states.    Under our
state decisions, however, it is not required to produce the
mortgage and note.    The indebtedness is not denied in Wier's
answer ; it is admitted in Schumpert's answer, and proven by
Dillard's testimony.    The only purpose of producing the mort-
gage or note is merely as instruments of evidence.    A certified
copy of the mortgage is on file, which is sufficient under the
statute, unless *non est factum* is pleaded.

In a proceeding to foreclose a mortgage, when the answer
admits the execution of the mortgage and note, and does not
deny that the amount claimed in the petition is due, there is
nothing for the plaintiff to prove.    *Cooley* v. *Hobart*, 8 Clarke
(Iowa), 358.    " A question might be made whether any one
but the makers of the note could insist on its production at the
trial.    They have admitted the debt by the mortgage, and this
is sufficient to charge third persons with notice of the debt
secured.    The only reason why the makers could insist on the
production of the note is that it may have been indorsed, and
a third person may at any future period present it for pay-
ment.    *Dean* et al. v. *Lizardi* et al., 2 Cushm. 425.    " The

mortgage, though but a collateral security, is the foundation on which the jurisdiction of a court of chancery rests. In this proceeding the notes are immaterial. If it describe the debt intended to be secured by it, that is sufficient, even though no note be given. It is taken to secure the payment of the debt; the note is but evidence of the debt." *Morse* v. *Clayton*, 3 Smed. & M. 373. In the case at bar the existence of the mortgage and note is not disputed; the only question is whether the deed of trust and note were taken in satisfaction and extinguishment of the mortgage and note. .

5. It is also objected by the appellants that the matters involved in this suit are *res adjudicata*. We deny that the merits of this case were involved, or could be involved, in the former suit. *Agnew* v. *McIlroy*, 10 Smed. & M. 352. The former suit was an action of ejectment, involving the legal title to the land in controversy, derived from a sale under a deed of trust, in which no title had passed, because the legal title had previously been conveyed in the mortgage, and was outstanding in the mortgagees. In the ejectment suit, the object was to recover possession of the land on the strength of the legal title; in this it is sought to subject the land to sale for the satisfaction of the debt the mortgage was given to secure. The former action was incompetent. *Coopwood* v. *Baldwin*, 3 Cushm. 129. A judgment, or any other pleading, which does not go to the foundation of the action, is not a bar to a subsequent suit. *Johnson* v. *White*, 13 Smed. & M. 584. A judgment is conclusive only in respect to the grounds covered by it, and the law and facts necessary to support it. *The People* v. *Johnson*, 38 N. Y. 63; *McKnight* v. *Dunlap*, 4 Barb. 136; *Shannon* v. *Englehart*, 34 Barb. 198. The jurisdiction of the two courts is not concurrent in reference to the matters passed upon in either suit. .

6. It is also assigned as error, the "refusing to permit the defendants to file amended or supplemental answers, showing that both the mortgage and trust deed had become barred by the statute of limitations *pendente lite*." An application of

this sort comes too late, after the cause has been heard and the chancellor ready to render a final decree, even if there were substantial grounds for the application. But we think that the statute of limitations cannot be pleaded in the manner here proposed.

Simrall, C. J., delivered the opinion of the court.

The complainants, appellants in this court, sought the foreclosure of a mortgage executed by Schumpert, January, 20, 1868, to Pinson, Dillard & Co., a commercial firm at Mobile, Alabama. In August, 1869, this firm ceased to do business at Mobile, and transferred its assets for liquidation to the house of Dillard, Pinson & Co., doing business at Memphis, Tennessee, and composed of the same partners as the Mobile firm, with an additional member, Coffin, who had no interest in the Mobile firm. December 1, 1869, Schumpert made a deed in trust on the same property, to secure a debt of $2,440, to Dillard, Pinson & Co. Colonel Pinson, one of the partners, arranged with Schumpert for the new security, because, as alleged, of some irregularities in the mortgage — that instrument not containing the individual names of the members of the firm.

The complainants further allege that on the ——— day of ———, A. D. 1867, Schumpert conveyed the same land to Wier; that the deed was not acknowledged until May 28, 1868, and was recorded on the 30th of that month; but that this conveyance was contrived and designed to defraud the complainants as creditors.

The answer of Schumpert and Wier place the defense on several grounds, viz.: first, that the deed in trust was accepted by the complainants in satisfaction of the mortgage; second, that the conveyance to Wier is older than the deed of trust, and confers a superior right; that it is not erroneous or fraudulent, but was made upon good consideration, and bona fide; third, that the mortgage, though placed first on record, ought to be postponed to the elder and supe-

rior equity of Wier, because the mortgagees are not purchasers for a valuable consideration, and are, therefore, not protected by the statute; fourth, that the deed of trust and the note executed by Schumpert in 1869 were accepted by the complainants in full discharge and satisfaction of the original note and mortgage, and the deed to Weir, having been recorded before the trust deed, created an equity superior to it; fifth, that the mortgage to Pinson, Dillard & Co. is void for uncertainty.

The last proposition lies at the foundation of the complainants' right, and will be considered first. The exact objection made to the deed is that it does not name the members of the firm individually, and altogether omits their christian names. Names originally imported something more than sounds for distinction's sake — as, some natural qualities, features, or relations; now there is no other use of them than to distinguish families and individuals from all other persons. Lord Bacon, applying that idea to grants, " which are to receive the most benign interpretation, and most against the grantor," says: " If there shall be sufficient shown to ascertain the grantor and grantee, and distinguish them from all others, the grant will be good." Bac. Abr., title " Grant," c.

It is said in Sheppard's Touchstone, 53, that the names of parties are inserted to ascertain them, and if sufficient be shown to point out grantor and grantee, the deed is good. The illustrations given are, a grant by the Duke of Norfolk without his baptismal name; a grant to T. and his wife, Ellen, when in truth her name was Emeline. The maxim *id certum est quod certum reddi potest* applies to deeds. A grantee may be described by his office, or relationship. It is immaterial that there is a mistake in the christian name. A deed to Robert, Bishop of E., is good, though his real name was Roland. 3 Washb. on Real Prop. 236, 239.

In *Fletcher* v. *Munson*, 5 Ind. 268, the grant was to *Barratt*, and the objection was made that the christian name was omitted. But the court responded that the deed was delivered

to Barratt, with the intention of vesting the legal title, and that the ambiguity could be supplied by proof. In *Hofman* v. *Porter*, 2 Brock. 158, Chief Justice Marshall sustained a conveyance to *Peter Hofman & Son*. Though there were several sons, it was easy to apply the description to the particular son connected with the father in business. It would be no more difficult to ascertain who were the members of the firm of Pinson, Dillard & Co.

If it were conceded that only those partners whose surnames are given took the title, nevertheless the mortgage would inure to the benefit of the firm ; and all interested in the security could join in a suit for its enforcement. We conclude that the objection to the deed is not well taken.

It is further set up by Wier, in his answer, that the mortgagees were not purchasers for a valuable consideration, in such sense as to protect them against his prior equity.

It seems to be settled in our books that the mortgage must rest upon a valuable consideration, something new or contemporaneous. If it be made to secure a pre-existing debt, and there be no change in the evidence of indebtedness, but that remains in its original condition, then, as held in *Perkins* v. *Swank*, 43 Miss. 360, there is not such new motive or consideration as to give the mortgagee the protection of the statute. In *Hinds* v. *Pugh*, 48 Miss. 272, the attention of the court was particularly directed to what is in law a valuable consideration. The court, adverting to the *quantum* of it, adopted the ruling in *Dessau* v. *Waddington*, 6 Whart. 220, 236 : that " its amount or adequacy is nothing [material] unless it is merely colorable." " If the creditor cedes any existing right, or agrees to forbear enforcing his remedy, and gives time, there is a valuable consideration in the legal sense of the term."

If the creditor abandons a present right of action, and accepts a new obligation payable *in futuro*, it is the " cession of an existing right," and an extension of time, and is an adequate consideration for the security ; for the law is satisfied,

if the parties themselves have determined that fact, and predicates the new agreement upon it. . If the mortgage of 1868 is parcel of the arrangement by which the past indebtedness of Schumpert was to be forborne and extended, then it reposed upon a "new contemporaneous consideration," valuable in law.

The attention of the parties does not seem to have been specially directed to this point in the preparation of the case. We infer from the argument of counsel that Wier has established a superior equity if he has succeeded in proving that the mortgage was given to secure a debt previously contracted, though the note and mortgage were parts of the same transaction, and the extension of time was given because of the security. As we have seen, that is a mistaken view of the law.

The note is dated January 16, 1868. The mortgage purports to have been executed January 20th, four days afterwards. The debt was in existence, represented by the note extending the time of payment from January 16th to the following November, when the mortgage was executed. The indebtedness for which the note was given had been past due for several months. We cannot say, in the absence of proof, that the consideration of the mortgage was the forbearance. Unless so aided, how can it be inferred that the mortgage, subsequent in date to the note, was parcel of the arrangement for further time.

The only testimony tending to throw light on this subject is the answer of Schumpert to the eighth interrogatory. The question was, "Was the debt complainants held against you due at the time the first mortgage was given, and was there an extension of time of payment in the contract of executing the note and mortgage first given?" It will be observed that the interrogatory unites the note and mortgage as parts of the contract for the "extension of time of payment." The answer is, "It was due, and there was an extension of time given." If the response be construed as affirming that the extension was given in the circumstances assumed in the ques-

tion, then there is testimony to the point. This witness further states that Mr. Dillard, one of the Mobile firm, came to see him for the purpose of putting his indebtedness in such shape as that he could raise money on the security in bank. It might be inferred from this that the account of Schumpert was stated up to January 16th, and that the note and mortgage were one transaction, the note dated, however, as of the 16th.

It is quite well settled that, where a debtor has given a personal obligation aside from the mortgage — as, a note, a bond — it must be produced. at the hearing. If there has been a renewal of a preceding note, the creditor, if it does not appear that he has surrendered or destroyed the first, must exhibit both in the foreclosure suit. They constitute essential parts to his right of relief. Unless produced, it might be that they had been assigned. Nothing will excuse the non-production except loss or destruction.

In this case neither the note referred to in the mortgage nor the subsequent one named in the deed of trust were produced, nor was their absence explained. This is not a case where the mortgage is itself the only evidence of the debt. The debts existed in the form of notes. This objection was made in the Chancery Court before the final decree was passed.

The defendants asked leave of the court to amend their pleadings, so as to plead the statute of limitations. The ground was that the six years limited for suit on the note had expired at the time the application was made — not that they had elapsed before the bill was filed.

This suit was brought within the statutory time, and could not be affected by a subsequent bar, which might defeat an action at law on the note.

At the final hearing the complainants abandoned that part of their bill which impugned the conveyance made by Schumpert to Wier as a "sham," and a fraud upon them. Was the second note and the deed of trust made and accepted in payment and discharge of the first note and mortgage? The general rule is that, a mortgage being a security for a debt,

no change in the mode and time of payment — nothing short of actual payment or a release — will operate as a discharge.   1 Hill. on Mort. 476, sec. 3 ; *Morse* v. *Clayton*, 13 Smed. & M. 373.   A second note and mortgage is no waiver of a prior one made for the same debt.   *Burdett* v. *Clay*, 8 B. Mon. 287.

The security is for the debt.   So long as that can be traced through successive renewals, the mortgage will protect it.   It devolved on Wier, by sufficient testimony, to overcome this pre-sumption.   Independent of the deposition of Beal, the attor-ney, which was objected to, we cannot say that the conclusion of the chancellor on the issue of fact was wrong.   Wier, in his answer, relied upon the judgment in his favor in the ejectment suit as *res adjudicata*, a bar to the relief sought in this suit. That suit put to the test the title acquired by purchase at the sale of the trustees, under the deed of 1869, and did not in-volve the title under the mortgage of 1868.   The mortgage was to Pinson, Dillard & Co. (the Mobile firm), of which Coffin was not a member.   But the ejectment was brought by Pinson, Dillard & Coffin, purchasers at the trust sale, in all of whom the title by mortgage was not vested.   We do not think the plea is sustained by the record which was produced.

Other questions are pressed by counsel, but at this stage of the litigation they are unimportant.   It is said that Mrs. Pin-son, the widow and executrix of her husband, deceased, ought not to have joined as a complainant.   She is the legatee and devisee of her husband.   The partnership has been dissolved, and the collection of the debt is sought, for distribution among the partners ; besides, the title that was in Colonel Pinson, as mortgagee, has been devolved on her.   She is not an improper party.

For the error in not producing the notes or accounting for them, the exceptions to the report of the master ought to have been sustained.

The decree will be reversed and cause remanded, with in-structions to recommit the cause to the master, before whom the complainants may produce the evidences of indebtedness, or make proof of loss or destruction.